UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.             ) | 25-cr-253 (DLF) |
| ) | |
| VICTOR RENATO BLYTHE  ) | |

### RESPONSE TO ORDER OF THE COURT

Victor Blythe, by and through counsel, respectfully submits this response to the order of the Court issued on November 25, 2025, ordering the parties to file memoranda addressing whether temporary release is appropriate. Mr. Blythe submits that it is appropriate based upon the following reasons.

This is the exact type of scenario contemplated by 18 U.S.C. § 3142 (i) that warrants temporarily releasing a defendant based upon a "compelling reason." Courts have released defendants under this provision in similar circumstances when defendants suffer from illness or injuries that are too grave to be managed by correctional facilities. *See, e.g., United States v. Scarpa*, 815 F.Supp. 88 (E.D.N.Y. 1993) (permitting release of defendant suffering from AIDS that could no longer be managed by correctional authorities); *See also United States v. Cordero-Caraballo*, 185 F. Supp. 2d 143, 144-47 (D.P.R. 2002) (court ordered release of defendant who sustained multiple gunshot wounds, was partially paralyzed, and lost some arm function).

Many of the district court cases analyzing what constitutes a "compelling reason," did so in the context of the COVID-19 global pandemic. While some courts

thought that it was too speculative to release individuals based upon what could happen, some courts did release individuals with conditions that made them vulnerable to COVID-19. *See e.g., United States v. Kennedy*, 449 F.Supp.3d 713 (E.D. Michigan 2020) (released defendant who had underlying conditions and was not being treated properly at detention facility). This district court in Michigan released Mr. Kennedy, who had not yet contracted COVID-19, because it believed "such a failure to act could have devastating consequences for Defendant." *Id.* at 719.

Mr. Blythe's situation is not theoretical. While in the custody of the Department of Corrections (DOC), he was beaten and sustained a life-threatening injury that required emergency surgery. The DOC contributed to his life-threatening injury by failing to take the appropriate medical steps after he was assaulted. Mr. Blythe is still experiencing symptoms that warrant the attention of a medical doctor.

Based upon the medical records provided to the Court, the DOC has shown a pattern of delay in providing care to Mr. Blythe. First, Mr. Blythe did not receive a CT scan of his head after being punched in his head several times. There is simply no excuse for this failure. The Due Process Clause of the Fourteenth Amendment is implicated because defendants awaiting trial should not be subjected to conditions of confinement that would subject them to exposure to serious or potentially fatal illness. *See United States v. Martin*, 447 F.Supp.3d 399, 402 (D. Maryland Mar. 17, 2020). Based upon this DOC failure alone, the Court cannot be assured that moving forward Mr. Blythe will receive appropriate medical care.

But that was not DOC's only failure. Even after losing consciousness in the shower, it took the DOC several days to send Mr. Blythe to a hospital that could conduct a CT scan of his head.[1] Now, after receiving emergency brain surgery, Mr. Blythe has been advising the nursing staff that he is experiencing headaches, weakness, and numbness on his right side. To undersigned counsel's knowledge, he has not yet seen a medical doctor based upon these new post-surgery symptoms that have lasted more than two weeks after Mr. Blythe's surgery. While some tingling and numbness is common after surgery, the sensation should fade within a few days. Persistent numbness could signal a complication that warrants treatment.[2] Furthermore, persistent headaches post brain surgery is common but should still be taken seriously and managed correctly because pain causes high blood pressure, which can lead to an increased risk of intracranial bleeding.[3]

The Court cannot be assured based upon DOC's actions that Mr. Blythe's medical condition will not worsen again or require more serious treatment than the DOC can provide. The DOC does not have the capability to ensure that a medical doctor supervise Mr. Blythe each time that he experiences a potential complication that should be reported to his surgeon right away. After this kind of surgery, common discharge instructions say that a patient should contact their surgeon if you have

---

[1] Mr. Blythe complained of passing out in shower on November 2, 2025. A physician's assistant at the jail noted he was unable to see patient based upon this complaint on November 3, 2025. Mr. Blythe was not seen until November 5, 2025. It was not until November 7, 2025 that Mr. Blythe was sent to the ER based upon his continued complaints.
[2] https://www.verywellhealth.com/numbness-and-tingling-after-surgery-3156878
[3] https://pmc.ncbi.nlm.nih.gov/articles/PMC9061675/

weakness and headaches that will not go away.[4] Based upon the DOC records, when Mr. Blythe reported these symptoms, the nursing and PA staff did not send him to a medical doctor and simply made a plan to continue physical therapy. There are also inconsistencies in the DOC records. For example, on November 20, 2025, medical staff report that Mr. Blythe complained of a headache yet in the same record for the same day said he denied headaches. *See* DOC Records at 76-79. The same inconsistencies occur with Mr. Blythe's reports of weakness and numbness. *Id*. at 73-79. It is overall concerning that the reports comment phrases like "patient is not in distress," while in the same visit Mr. Blythe reports distress, i.e. headaches and weakness and numbness.

The risks of keeping Mr. Blythe detained in his condition are too grave and are not supported by a legitimate government interest in keeping him detained. He is not a flight risk and there are several conditions of release that can assure the safety of the community.

Based upon all of the above circumstances, Mr. Blythe should be temporarily released pursuant to 18 U.S.C. § 3142 (i). The "compelling reason" is that Mr. Blythe suffered a life-threatening injury while in the custody of a facility that did not and has not taken appropriate steps to ensure his safety and wellbeing.

---

[4] https://www.mountsinai.org/health-library/discharge-instructions/brain-surgery-discharge. On November 21, 2025, Mr. Blythe reported, "I still have headaches and part of my right side is still a little bit numb." Medical records at 80.

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

/s/
_____

Maria N. Jacob
Assistant Federal Public Defender
625 Indiana Avenue, NW
Washington, DC 20004
(202) 208-7500
Maria_Jacob@fd.org