#### UNITED STATES DISTRICT COURT
#### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**VICTOR RENATO BLYTHE,**<br><br>Defendant. | Case No. 25-cr-253 (DLF) |

### GOVERNMENT'S OPPOSITION TO THE
### DEFENDANT'S TEMPORARY RELEASE

The United States of America, by and through its undersigned counsel, respectfully opposes the defendant's temporary release. For purposes of this opposition, the government incorporates the factual background in its prior pleadings.

### RELEVANT BACKGROUND

On August 29, 2025, the defendant went to urgent care at D.C. Jail and reported that he was physically assaulted by his cellmate. The defendant reported that he was punched with a closed fist several times to his face and head. He denied loss of consciousness. The examiner noted that his left eyebrow was swollen and disclose, his left zygomatic bone was swollen, and there was mild tenderness to the left side of his mandible (jawbone). He received x-rays that same day. The x-rays did not detect any fractures. The radiologist noted that, "if symptoms persist and/or progress, a CT scan can be obtained."

On November 2, 2025, the defendant reported that he was having a persistent headache, feelings of imbalance, and that he passed out in the shower. The physician's assistant was not able to see the defendant on November 3, 2025. On November 5, 2025, he had an initial visit related to the sick call. He again stated he had a persistent headache and balance issues. The PA's plan included a recommended follow-up for a neurologist and/or CT scan. On November 7, 2025, the defendant

went to urgent care because of persistent symptoms, and he was taken to the emergency room. The defendant was diagnosed with a subdural hematoma and subarachnoid hemorrhage and had a decompressive craniotomy.

The defendant returned to D.C. Jail on November 12, 2025. He has had follow-up visits with the medical staff at D.C. Jail on November 13, 14, 15, 16, 17, 18, 19, 20, and 21, 2025. This included physical therapy on November 14, 19, and 21, 2025.

## PROCEDURAL HISTORY

Mr. Blythe was arrested on August 12, 2025 and charged by complaint with Distribution of Child Pornography, in violation of 18 U.S.C. § 2252(a)(2), and Possession of Child Pornography, in violation of 18 U.S.C. § 2252(a)(4). The government sought pretrial detention of the defendant pursuant to 18 U.S.C. §§ 3142(e)(3)(E) (rebuttable presumption in favor of detention), and 3142(f)(1)(A) (crime of violence) because there is no condition or combination of conditions of release that will reasonably assure the safety of any person or the community. The defendant filed a Motion for Release, and the government filed a Memorandum in Support of Pretrial Detention, both on August 25, 2025. On August 26, 2025, a detention hearing was held. The Honorable G. Michael Harvey concluded that the defendant had not rebutted the presumption that the defendant should be detained pending trial. On September 4, 2025, the defendant filed a Motion to Review Order of Detention. On September 8, 2025, the government filed its Opposition. On September 10, 2025, this Court affirmed the magistrate's order, finding that the defendant had not rebutted the presumption of detention, and even if he had, detention was warranted based on the facts of the case. In so ruling, the Court noted that the defendant was a danger to children and highlighted the unique dangers posed by crimes of a digital nature. The Court noted that it was not realistic or feasible to monitor the defendant at all times or to provide monitoring necessary to prevent access to internet-capable devices. The Court pointed out that the defendant lived with his brother for years while he

engaged in the criminal conduct at issue here and noted the defendant was successful at hiding his criminal activity from his family members. The Court also found that GPS monitoring alone would not be sufficient, given the nature of the offenses.

## ARGUMENT

Under the Bail Reform Act, if the Court determines that "no condition or combination of conditions will reasonably assure the appearance of [the defendant] as required and the safety of any other person and the community," the Court shall order the defendant held pending trial. 18 U.S.C. § 3142(e). "In common parlance, the relevant inquiry is whether the defendant is a 'flight risk' or a 'danger to the community.'" *United States v. Vasquez-Benitez*, 919 F.3d 546, 550 (D.C. Cir. 2019). As a threshold matter, the government must demonstrate by a preponderance of the evidence that a defendant is a flight risk, *see United States v. Anderson*, 177 F. Supp. 3d 458, 466 (D.D.C. 2016) (citing *United States v. Xulam*, 84 F.3d 441, 443 (D.C. Cir. 1996)), and by clear and convincing evidence that he is a danger to the community, *see* 18 U.S.C. § 3142(f). In determining whether any condition or combinations of conditions will assure the safety of the community, in light of any applicable presumptions, the Court weighs four factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. § 3142(g).

However, the Court "may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C.A. § 3142(i). In *United States v. Lee*, 451 F.Supp.3d 1 (D.D.C. 2020), the Court rejected a defendant's request to release him under § 3142(i) during the COVID-19 pandemic, under the argument that the pandemic qualified as "another compelling

reason." While the Court noted that it could imagine a situation in which a defendant was successful on such an argument because of COVID-19, the defendant failed to do so in that case: "the Court can imagine a situation in which temporary release might be warranted notwithstanding the lack of any individualized reason for releasing the particular detainee, such as the potentially compelling generalized reason of indifference, ineptitude, or sheer inability on the part of corrections authorities to ensure the safety of the prison's population." *Id.* at 9. But the Court pointed out that "DOC has moved intentionally and swiftly to take myriad precautions for the protections of detainees…" *Id.* Thus, the defendant failed to show that the potential health risks "[made] it 'necessary' for him to be temporary released under section 3142(i)." *Id.* at 10.

Other courts who analyzed this issue during the pandemic noted that "in considering the propriety of temporary release, the court would need to balance the reasons advanced for such release against the risks that were previously identified and resulted in an order of detention." *United States v. Cox*, 449 F. Supp. 3d 958, 962 (D. Nev. 2020); *see also United States v. Rowe-Hodges*, 454 F. Supp. 3d 618, 623 (E.D. Tex. 2020) ("the preponderance of the evidence at the detention hearing showed that Defendant was a flight risk and a danger to the community… Defendant's promise to comply with conditions of release and to stay at his mother's house if released does not overcome the rebuttable presumption invoked by the government…)

Prior to the COVID-19 pandemic, courts only released a defendant for a medical condition under section 3142(i) in extreme circumstances. For example, in *United States v. Scarpa*, 815 F. Supp. 88, 89 (E.D.N.Y. 1993), *supplemented* (Mar. 5, 1993), the Court released a defendant under 24-hour guard of the U.S. Marshal's Service who was in the end-stage of life battling AIDS. Similarly, in *United States v. Cordero Caraballo*, 185 F.Supp.2d 143, 145-6, the Court temporarily released a defendant who had been shot and was partially paralyzed, noting that the Bureau of Prisons told the Court it could not provide the medical care the defendant needed.

4

In *United States v. Johnston*, 2017 WL 4277140, *9 (D.D.C. Sept. 22, 2017), the Court released the defendant for twenty-one days to receive cancer treatment. However, in that case, the defendant was diagnosed with cancer on June 12, 2017. *Id.* at *2. Beginning in July 2017, the defendant began asking D.O.C. officials to reschedule his cancer treatment. *Id.* But as of late September, D.O.C. had not complied with those requests. *Id.* In contrast, *United States v. Parker*, 517 F. Supp. 2d 375, 377 (D.D.C. 2007), the Court rejected an argument to release the defendant based on medical necessity, noting that "Parker can receive the medical treatment he requires while detained at the Correctional Treatment Facility." Likewise, in *United States v. Hammond*, 2016 WL 7384175, *4 (W.D.Pa December 21, 2016), the Court did not release the defendant, despite a cancer diagnosis, based on representations that the correctional facility had approved all oncology appointments and treatments and was providing adequate care.

This case is distinguishable from the cases where a defendant is released. As indicated by the defendant's medical records, he is meeting with a member of the medical staff every day. He is receiving the medication as prescribed by Howard University Hospital, and he is receiving physical therapy as prescribed by Howard University Hospital. Though certainly serious, there is nothing in the defendant's medical records to suggest that his medical condition is so rare or severe that D.C. Jail is unable to care for him. To the contrary—D.C. Jail appears to be following his discharge instructions and providing him adequate care.

## CONCLUSION

For the foregoing reasons, this Court should not temporarily release the defendant.

                                          Respectfully submitted,

                                          JEANINE FERRIS PIRRO
                                          UNITED STATES ATTORNEY

Dated: November 25, 2025        By:  */s/ Rachel Bohlen*
                                                 Rachel Bohlen

        D.C. Bar No. 1010981
        Assistant United States Attorney
        United States Attorney's Office
        for the District of Columbia
        601 D Street NW
        Washington, DC 20530
        (202) 809-3575
        rachel.bohlen@usdoj.gov